IN THE MATTER OF THE PETITION OF KAMAKEE AND W. P. KA-
MAKAU HER HUSBAND, FOR SETTLEMENT OF THE BOUNDARIES
OF THE ILI OF KEWALO. *

A CERTIFICATE of award issued by the Land Commission of an Ili of
land, *by name*, is only *prima facie* evidence of the nature of the
award made and may be contradicted by the original record. It
appearing that by the record of the Land Commission, the Ili of
"Kewalo" had been awarded by surveys attached to the award
it was held that a certificate of boundaries by the Commission of
Land Boundaries for the Island of Oahu, covering more than the
said surveys is void.

The judgment was rendered by Justice ROBERTSON.

This matter comes before the Court on appeal from the
decision of the Commissioners of Land Boundaries for the
Island of Oahu.

On the 22d of November, 1864, Madame Kamakee, and
her husband W. P. Kamakau, Esq., filed a petition with the
Commissioners of Land Boundaries, asking them to define,
certify, and award the boundaries of that part of the Ili of
Kewalo, situated on the southeast side of the city of Hono-
lulu, claimed as belonging to Kamakee, but not awarded to
her *by survey*, by the late Board of Land Commissioners.

Opposition was made to the petition before the Boundary

2

Commissioners by the Attorney General, on behalf of the Government.

After the presentation by the petitioners of a certificate showing that, in the Great Division of Lands in 1848, Kamakee received the Ili of Kewalo from His Majesty Kamehameha III; together with a certificate of award by the Land Commission, to Kamakee, of the Ili of Kewalo, by name, dated the 28th of September, 1852, purporting to be issued under the Konohikis Act of 19th June, 1852; and after hearing such testimony as was offered touching the ancient boundaries of the Ili of Kewalo, and the arguments of counsel, on both sides, the Commissioners, on the 4th of December, 1865, granted to the petitioners a certificate of confirmation of boundaries as claimed by them, awarding to Kamakee all the lands claimed by the petitioners as forming part of the Ili of Kewalo. From this decision, Mr. Harris, as Attorney General, took an appeal to the Supreme Court, on behalf of the Government.

When the cause came on to be heard before this Court, counsel for the petitioners moved to dismiss the appeal filed by Mr. Harris, as Attorney General, on the ground that at the date of the filing of the said appeal, Mr. Harris had ceased to be Attorney General by having been transferred to the office of Minister of Finance. After considerable discussion Mr. Harris, at the suggestion of the Court, in order to save the trouble of an adjudication on this question, withdrew the appeal filed by him as Attorney General, saving the right of the Minister of the Interior to lodge an appeal on behalf of the Government, which was accordingly done. An appeal was also lodged, in due form, by the Commissioners of Crown Lands.

Upon a question being raised as to the admission of fresh testimony, the Court decided to affirm and adopt the rule first laid down by the Circuit Court of the Island of Kauai, at the May term, 1865, that, in order to meet the ends of

justice, in all cases of appeal from the Commissioners of
Land Boundaries, either party is at liberty to introduce fresh
evidence, although not newly discovered, provided such
evidence is not merely cumulative.

It appears that after Madame Kamakee had obtained the
Ili of Kewalo, in the Mahele of 1848, her claim for the same
was presented to the Board of Land Commissioners, by her
former husband, Mr. Jona Piikoi, to be awarded upon
according to law.  On the 28th of September, 1852, a certi-
ficate of award was issued, signed by Mr. J. L. Nailiili, one
of the clerks of the Land Commission, certifying that the
Board had awarded the Ili of Kewalo to Kamakee, *by name*,
under the provisions of the Act passed on the 19th of June,
1852, which empowered the Land Commission, in certain
specified cases, to dispense with the presentation of surveys,
which was required in all other cases, and to issue awards
for whole lands claimed by Konohikis, by their names only.

Upon the documentary evidence thus presented by the
petitioners, the foundation of their petition to the Boundary
Commissioners, is *prima facie* sufficiently clear, and the Com-
missioners appear to have been almost wholly controlled by
this evidence in their adjudication of the matter.  But as
has been before ruled in this Court, (see Kalama *vs.* M. Ke-
kuanaoa and John Ii, Hawaiian Rep., vol. 2, page 202), a
certificate of award by the Land Commission, is only *prima
facie* evidence of the nature of the award made, and may be
contradicted by the original records of the Commission, if
produced. .

In accordance with this rule, counsel for the appellants
have laid before us the original award of the Land Commis-
sion, for the Ili of Kewalo, which is recorded at pages 60, 61
and 62, Award Book, Volume 10.  The heading of the
award is in the ordinary brief form, stating that Kamakee
had claimed her several pieces of land (or places), in the Ili
of Kewalo, Ahupuaa of Honolulu, the same having been

granted to her by King Kamehameha III, at the Division of 1848, and that she held the same without dispute ; that the Board had therefore awarded her a freehold title less than allodial, which might be converted into an allodial title, by payment of the Government commutation, and making the usual reservation of *kuleana* rights.   Then follows a clause stating that the award was made in accordance with the provisions of the Act of the 19th June, 1852, relating to Konohikis.   But after the usual statement of the bill of costs, occurs the phrase which was never used except when an award was made by survey, viz. : *Eia na Palena,* which means in English, Here follow the Boundaries.   To this award are attached, accordingly, the surveys of four separate pieces of land, the three first made by the Rev. A. Bishop, and the last by Mr. S. P. Kalama.   The first survey is that of a piece of land situated in Nuuanu, but belonging to Kewalo, containing 8 acres and 9 39-100 square chains ; the second survey is that of the portion of Kewalo, situated in Pauoa, comprising 50 1-10 acres ; the third survey is that of a disputed piece, also situated in Pauoa, measuring 1 acre and 4 2-100 square chains ; and the fourth survey is styled the survey of Kewalo, an Ili of Honolulu, containing an area of 270 84-100 acres.   This last, which is the principal survey, is marked on the plan, "Ili of Kewalo," the others appearing to be surveys of leles belonging to the Ili.

Thus stands the record of the Land Commission, and it is contended, on the part of the appellants, that this is not a case of an extraordinary award, by name, under the Act of 1852, but the ordinary case of an award by survey, final and complete as regards the boundaries as well as the title.

The appellants have also introduced evidence for the purpose of proving that, at the time the award was made, it was received and accepted by Kamakee and her former husband, Mr. Piikoi, as final and complete in every respect.

Dr. G. P. Judd has testified that he was intimately ac-

quainted with Piikoi for many years ; that Piikoi, as is well known to every member of the Court, was a shrewd man of business, who looked well to his own interests and those of his wife, for whom he acted in all business matters ; that Piikoi was a *Luna* or Land Agent for the King, and was also in the employment of the Government under him, (Dr. Judd) ; that he advised Piikoi, as an example to some other chiefs who were dilatory in having their lands surveyed, to have all of his surveyed before they were awarded, and that Piikoi repeatedly told him he had done so, and that he had not accepted an award from the Land Commission for any land *by name.* Dr. Judd also testified that after Kamakee had obtained Kewalo in the Division, Piikoi wished to move the fence up to the public road, and he (Dr. Judd) on behalf of the Government, permitted him to do so. He further testified that the late Kuhina Nui, John Young, Piikoi and himself, were in the habit of consulting together in regard to lands ; that he enquired of them to whom the plain of Kulaokahua belonged, (which petitioners now claim as part of Kewalo) and they said it belonged to the Government ; that he advised that Kulaokahua should be surveyed and sold for house-lots, which was resolved upon by the Privy Council, of which Piikoi was a member, and that when the lots were sold Piikoi made no objection ; also that on one occasion, Piikoi came to advise with him respecting a piece of land in Kulaokahua, occupied by a foreigner, which lot with a house upon it was purchased by Piikoi.

Mr. John Montgomery has testified that he purchased, from the administrators of the estate of F. R. Vida, lots Nos. 95 and 96, in Kulaokahua, and re-sold them to Jona Piikoi ; that these lots are situated nearly opposite Kamakee's gate ; that there was a two-story wooden house on the lots, which Piikoi removed within the wall of Kamakee's place. It appears by the certificate of the Registrar of Conveyances that this sale to Piikoi was made on the 29th of April, 1852.

Mr. S. P. Kalama testified that he was sent for by Piikoi to go and see him and Kamakee in relation to the survey of the Ili of Kewalo ; that he went and met them both at Kamakee's house ; that Piikoi and Kamakee consulted together, in his presence, in regard to the survey, and that Kamakee told Piikoi to go with Kalama and have the land surveyed as he (Piikoi) thought was right ; that Piikoi pointed out the boundaries to him, and he made the survey accordingly ; that when the plan and survey were completed he delivered the same to Piikoi, and the same are correctly copied on the Land Commission books.

The appellants have also presented in evidence a certificate from the Interior Department, showing that between the 5th of September, 1846, and the 16th of January, 1851, the Government sold and patented sixty-two pieces or parcels of land, in Kulaokahua, to nearly as many different purchasers. And lastly, it appears that Jona Piikoi, by his will, devised to Madame Kamakee the lots purchased by him from Mr. Montgomery, and that she has accepted the devise.

Upon this evidence we regard it as conclusively proven, that Madame Kamakee was well aware, at the time she obtained the Ili of Kewalo from the King, that the Government held possession of Kulaokahua, and had caused the same to be surveyed and publicly offered for sale in building lots, to which she offered no opposition ; that Mr. Jona Piikoi, acting for Kamakee, by her authority and consent, required the Land Commission to award her land in the Ili of Kewalo by survey ; that he laid before the Board, for that purpose, the four surveys which are recorded in the Award Book ; that all the land claimed by Kamakee, under her grant of the Ili of Kewalo from the King, was awarded to her by the Land Commission, according to the surveys presented on her behalf, without abatement ; and that the award was accepted by her as final.

In our opinion, therefore, the clause in the formal part of

the award, to the effect that the same was made in accordance with the Act of 19th June, 1852, must, on the ground of manifest inconsistency, be treated as void ; and the claim now set up by the petitioners, must be regarded as resting solely upon a clerical error committed by Mr. J. L. Nailiili, the occurrence of which error may be accounted for in either of two ways. The Court is familiar with the *modus operandi* pursued in the Land Commission office, and we are aware that it was usual for the clerks to have the headings of awards prepared, sometimes · for months before the awards were finally settled and signed. When Mr. Nailiili wrote the heading of this award, he may not have been aware that the land was to be awarded by survey. It appears by a note attached to the award, that the dispute touching the smaller piece of land in Pauoa, was heard and decided only on the same day that the award is dated, which leads us to conclude that the surveys had been but recently presented. But another, and more probable hypothesis is this : that Mr. Nailiili understood the Act of the 19th June, 1852, in the same sense in which it appears to be understood by the counsel for the petitioners, who contends that after the passage of said Act, the Land Commission was required to grant awards, *by name only*, for all whole Konohiki lands, and was not then at liberty to award any ahupuaa or ili of land, by survey. But this is clearly a misapprehension of the meaning of the Act, the effect of which was merely to relax the previous law on the subject, so far as to permit the Land Commission to grant awards for whole ahupuaas and ilis, by their proper names, in those cases where surveys were not presented. That Mr. Nailiili misconstrued the Act is by no means improbable, as it had been but recently promulgated, and this supposition is strengthened by the fact, that all the seven awards, of which this is the last, under claim No. 10,605, comprising lands belonging to both Kamakee and Piikoi, and which are recorded in close proximity, and all

worded alike, although they are all accompanied by their appropriate surveys, showing that Mr. Nailiili supposed at that time, that notwithstanding the accompanying surveys, the awards were issued under the Konohikis Act ; and the error he made in the formal part of the awards being in the Hawaiian language, the more easily escaped detection at the time the awards were signed.

It appears that the Boundary Commissioners have likewise fallen into error, and misunderstood this point, although not in exactly the same way as counsel. They seem to have regarded the award for Kewalo, as an award made partly by survey and partly by name. That this also is a mistaken view is perfectly clear, for the Land Commission was only authorized to issue awards, either with surveys attached to and made a part of the award, which was the ordinary way ; or, by name only, without any survey whatever, which could only be done in the comparatively few cases coming within the Konohikis Act. Any award made by the Land Commission in contrariety to this, must have been made in a manner at variance with the laws governing its proceedings ; and so far as we are advised no such award was ever made.

Our decision is that the award of the Boundary Commissioners should be set aside, and the petition dismissed ; and that each party pay their own costs. Let judgment be entered accordingly, as of the last day of the January Term.

Mr. Stanley, for the Petitioners.

Messrs. Harris, Montgomery and Thompson, for the Government and Crown Land Commissioners.

Honolulu, 14th March, 1866.